**JOSEPH E. SEAGRAM & SONS, INC. and Jes Developments, Inc., Plaintiffs,**

v.

**Robert ABRAMS, Attorney General of the State of New York, Orestes J. Milhaly, Director of the Securities Bureau of the Department of Law of the State of New York and St. Joe Minerals Corporation, Defendants.**

**No. 81 Civil 1419 (MP).**

United States District Court,
S. D. New York.

March 25, 1981.

Simpson, Thacher & Bartlett, New York City, for plaintiffs; Roy L. Reardon, Melvyn L. Cantor, David Chapnick, and Charles E. Koob, New York City, of counsel.

Robert Abrams, Atty. Gen., State of New York, New York City, for defendants Abrams and Milhaly; Eugene D. Berman, and Linda S. Martinson, Asst. Attys. Gen., New York City, of counsel.

Wachtell, Lipton, Rosen & Katz, New York City, for defendant St. Joe Minerals Corporation; Martin Lipton, George A. Katz, and Lawrence P. Pedowitz, New York City, and Debevoise, Plimpton, Lyons & Gates, Asa Rountree, New York City, of counsel.

MILTON POLLACK, District Judge.

An application is presented for a temporary restraining order incident to a further application for a temporary and ultimately preliminary injunction sought against a proposed offer by St. Joe described in a news release issued on March 24, 1981.

The directors of St. Joe have announced that they are prepared to sell off its assets and, failing this, to destroy the charter of the company, seemingly in order to circumvent the plaintiff's offer to purchase St. Joe's stock from stockholders willing to sell to the plaintiff.

There must be some radical defect or gap in existing securities and corporation law and regulation which would allow an assumption of power by caretakers of a corporation to deal with its assets and its life in retaliation for a hostile tender not otherwise intended or defensible as good corporate business. Surely they were not elected and permitted to serve as directors on any such platform. It is inconceivable that an alleged flourishing enterprise has authorized its board to subject the assets and charter of the company to a scorched earth policy to be accomplished in the name of an exercise of business judgment but in fact, it is alleged, merely to thwart a change in the existing stock ownership which may end the tenure of the present directors and key officers of the company. This is what plaintiff charges and what St. Joe stoutly denies. This raises an issue of triable fact.

The guardianship of the interests of the owners of the enterprise may have been pushed beyond their trust and the legitimate bounds of directors' power; they may have egregiously overstepped their bounds. I make no finding thereon at this time, but an evidentiary hearing is clearly warranted by the unusual circumstances portrayed.

Before this innovative program is implemented in any degree, a full justification is in order.

The plaintiff is a tender offeror and is as well a substantial stockholder of St. Joe and asks the Court's protection under the umbrella of Section 14(e) of the Securities Exchange Act of 1934 as amended—presumably on the theory that an improper manipulation of the market is in progress by the moves of the St. Joe directors, designed to mislead and damage the true interests of stockholders and investors. St. Joe denies the premises on which the plaintiff proceeds.

The Court is fully mindful of the teachings of the Santa Fe case and its impact on the business judgment doctrine and state law principles. However, to resolve the proper cataloguing of the matters undertaken herein will require an evidentiary hearing to expose the matters in their true light. This case seemingly might be said to go beyond the Treadway case and introduces something more to be conjured with on the basis of the facts as established.

St. Joe was organized many years ago. For twenty years until 1980 the marketplace stamped the value of its stock in a range between $25 and $1 a share, approximately. Its price range all of last year, 1980, was a high of $37 and a low of $14, approximately. Last month the market valued the St. Joe stock at a high in the range of $29 a share, a low of $26 a share, ending up at $27 a share. In March of this year the stock traded in approximately the same general range until just before the tender offer was made public. These figures indicate what willing buyers paid to willing sellers and what willing sellers were willing to sell to willing buyers in the open market and measured the market's price on the performance of the company as administered by the present board of directors.

Into this picture the plaintiff appeared with an offer to St. Joe stockholders to buy their shares at $45 per share. This galvanized the board of directors of the company to take action to thwart that offer—first, by legal proceedings which collapsed in a week, and then by the extraordinary announcement of a proposed buy-out of a small segment only of stockholders, using the corporate till to accomplish this at a price of $60 a share and with a preferred stock issue in the background, the details yet to be worked out. The announcement indicates that a frenzied search for a competitive third party offer for the company's stock is going on, but none as yet has appeared, and that a proposed selling off of the assets was in contemplation by a plan to seek the sale of its attractive properties, and indeed one of the most attractive of them which yields 10 percent of the corpo-

rate earnings, and to raise more cash to buy in more stock in that way with the company's treasury.

The plaintiff points to the fact that St. Joe is restricted in the amount it can pay out in dividends and for share purchases. I have no information other than the plaintiff's statement to that effect. No purchaser has put in an appearance for the St. Joe assets, and the most innovative announcement of all is that all these means failing, the board would liquidate the company. The pall of the latter suggestion would be withdrawn, the Court is told, but it goes to motive and intent at the time of the announcement of the plan.

The value on liquidation is estimated by the board's announcement to be at more than $60 a share, subject to various unknowns, including expenses of liquidation. The anomaly of this is that only within a week or so a glowing forecast of substantially increased corporate earnings and substantially increased value of a corporate asset was issued by the directors of St. Joe.

The events pose a possible case of a determination to keep control of the company entrenched within the present board of directors regardless of the company's real best interests or else to dismember it piece by piece, even to the point of liquidation of the enterprise, regardless of the proclaimed profitability and in the absence of all evidence whatsoever that the actual owners of the enterprise want its demise.

The initial burden on the critical questions herein lies with the plaintiff. Enough has been demonstrated to warrant a full-scale hearing on whether there is indeed business judgment justification for what is taking place. In determining whether to issue a temporary restraining order, the Court must balance the equities.

The interests of potential and actual stockholders and investors and the integrity of the market should be preserved by a temporary restraining order.

The grant of such relief should in no way be construed as reflecting any findings of ultimate fact which would be binding on final submission following a hearing.

The temporary restraining order submitted by the plaintiff will be signed and filed forthwith, and notice thereof is hereby given to all parties present.

I have signed the order to show cause with the temporary restraining order, and I have signed the order for expedited discovery. A copy received may be endorsed on both by counsel, and the papers delivered to the clerk.

A bond will be required here in the amount of $100,000, to be posted before the close of business tomorrow.